# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 21-50544

BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN,

*Plaintiff-Appellee,*

v.

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, EL PASO IN NO. 3:21-CV-122,
HONORABLE DAVID BRIONES, U.S. DISTRICT JUDGE

## REPLY BRIEF FOR DEFENDANT-APPELLANT

ROBERT S. HAWKINS
ANDREW J. ROLFES
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
(215) 665-2000
rhawkins@cozen.com
arolfes@cozen.com

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

**Table of Contents**

**Page**

ARGUMENT .............................................................................................1

A.   BLET Mischaracterizes The Record In This Case. .........................................3

B.   BLET Has Not Made The Requisite Showing of Irreparable Injury To
     The Designated Bargaining Representative To Avoid Arbitration of A
     Claim Under Section 2 Third And Fourth Of The RLA. ..............................11

C.   Union Pacific's Argument That Sections 2 Third And Fourth Prohibit
     Interference With The Union As Opposed To Individual Union Officers
     Is Supported By The Statutory Text And Recent Precedent Under The
     RLA ................................................................................................18

D.   BLET's Argument That Union Pacific Waived Any Defense To The
     Union's Surveillance Claim Misrepresents The Factual Record And
     Has Nothing To Do With The District Court's Jurisdiction To Issue An
     Injunction In This Case.....................................................................20

E.   The Norris-LaGuardia Act Also Requires A Showing Of Irreparable
     Harm To Justify Issuance Of An Injunction.................................................22

CONCLUSION ........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................15, 16

*Association of Professional Flight Attendants v.*
*American Airlines, Inc.*,
843 F.2d 209 (5th Cir. 1988) ......................................................*passim*

*Bell Atlantic Corp. v. Twombley*,
550 U.S. 544 (2007) ..................................................................................15, 16

*Brotherhood of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co.*,
894 F.2d 1463 (5th Cir. 1990) ....................................................16, 17

*Brotherhood of Ry. Trainmen v. Central of Georgia Ry.*,
305 F. 2d 605 (5th Cir. 1962) ........................................14, 15, 16, 17

*Conley v. Gibson*,
355 U.S. 41 (1957) ..........................................................................15

*Dean v. City of Shreveport*,
438 F.3d 448 (5th Cir. 2006) ..............................................................16

*Gahagan v. U.S. Citizenship & Immigration Servs.*,
911 F.3d 298 (5th Cir. 2018) ..............................................................16

*Grand Trunk Western R.R. Co.*,
12 NMB 228 (June 27, 1985) ..............................................................19

*International Ass'n of Mach. and Aerospace Workers, Airline Dist.*
*146 v. Frontier Airlines, Inc.*,
664 F.2d 538 (5th Cir. 1981) ......................................................13, 14

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002) ..............................................................21

*National R.R. Pass. Corp.*,
31 NMB 178 (Jan. 29, 2004) ..............................................................19

*National R.R. Pass. Corp. v. International Ass'n of Mach.*
  *& Aerospace Workers*,
  915 F.2d 43 (1st Cir. 1990)............................................................12, 15

*TWA, Inc. v. Independent Fed. of Flight Attendants*,
  489 U.S. 426 (1989).............................................................11, 12, 16, 22

*United States v. Rodriguez*,
  602 F.3d 346 (5th Cir. 2010) ............................................................16

*United Transp. Union v. National R.R. Pass. Corp.*,
  588 F.3d 805 (2d Cir. 2009) ....................................................2, 19, 20

*Wisconsin Central Transp. Corp.*,
  29 NMB 282 (Apr. 26, 2002) ............................................................19

*Wright v. Union Pacific R.R. Co.*,
  990 F.3d 428 (5th Cir. 2021) ............................................................23

## Statutes

29 U.S.C. § 107........................................................................................22

45 U.S.C. § 152 Third.....................................................................*passim*

45 U.S.C. § 152 Fourth...................................................................*passim*

45 U.S.C. § 152 Ninth.............................................................................18, 19

45 U.S.C. § 153..........................................................................................1

## Other Authorities

F. Elkouri & E. Elkouri, *How Arbitration Works*, Ch. 15 § 15.3A.I
  (BNA 8th Ed. 2019)................................................................................7

Gershenfeld, Discipline and Discharge, The Common Law of the
  Workplace: The Views of Arbitrators 180 (St. Antoine, ed., BNA
  Books 2d ed. 2005)................................................................................7

LEGAL\54166048\2

## **ARGUMENT**

Appellee's brief grossly misrepresents the record developed in this case and fails to address the overwhelming case law cited in Union Pacific's opening brief, which establishes that the district court erred in asserting jurisdiction over BLET's claims under Sections 2 Third and Fourth of the RLA, 45 U.S.C. §§ 152 Third and Fourth.[1]

Despite BLET's baseless hyperbole, the evidence presented at the June 10, 2021 preliminary injunction hearing conclusively established that the contractual grievance process, which culminates in binding arbitration pursuant to Section 3 of the RLA, remains available to the six employees charged with disciplinary infractions.  Thus, any purported "finding" by the district court that BLET would suffer irreparable injury if Union Pacific was permitted to proceed with the investigations for those employees was clearly erroneous.  Any dispute over the propriety of any disciplinary action that might ultimately be taken against the charged employees remains a minor dispute over which the National Railroad Adjustment Board ("NRAB"), or an arbitration panel established by the parties, has exclusive jurisdiction under Section 3 of the RLA, 45 U.S.C. § 153.  Thus, the district court erred as a matter of law by asserting jurisdiction over this case.

---

[1] Defined terms and abbreviations in this brief will have the same meaning as those from Appellant's opening brief.

BLET's remaining legal arguments also fail to rebut Union Pacific's arguments, which explain why the district court improperly asserted jurisdiction over the Union's claims in this case. BLET is simply wrong about this Court's precedents. Indeed, it is clear that a district court can only assert jurisdiction over claims under Sections 2 Third and Fourth of the RLA if the Union proves that it would be subject to irreparable injury of such magnitude that any remedy that might come from the grievance and arbitration process would be meaningless. *Association of Professional Flight Attendants v. American Airlines, Inc.*, 843 F.2d 209, 211 (5th Cir. 1988) ("*APFA v. American*").

BLET also failed to rebut Union Pacific's argument that Sections 2 Third and Fourth require proof that Union Pacific interfered with BLET's status as the designated system-wide bargaining representative, rather than showing merely that local union officers were potentially subject to disciplinary action. Union Pacific's position is squarely supported by both the statutory text of those sections, and case law interpreting them, in particular the Second Circuit's decision in *United Transp. Union v. National R.R. Pass. Corp.*, 588 F.3d 805, 812 (2d Cir. 2009) ("*UTU v. Amtrak*"), which BLET fails even to cite.

BLET repeatedly argues that Union Pacific engaged in unlawful surveillance, based solely on its unsupported claim that the Notices of Investigation (issued to the charged employees) were an attempt to investigate

what happened at a local union meeting.  The undisputed record evidence, however, shows that those Notices of Investigation sought to investigate the charged employees for actions relating to a fight that took place ***before*** the local union meeting in a parking lot outside a restaurant where the meeting was scheduled to take place.  And, in any event, BLET offers no RLA case support for its position that any such alleged "surveillance" would meet the stringent standard for asserting jurisdiction under Sections 2 Third and Fourth over what is otherwise a minor dispute involving disciplinary matters governed by the parties' collective bargaining agreement.  BLET's further suggestion that a company cannot commence disciplinary proceedings for actions that occurred off premises and not during working hours is utterly without merit.

Finally, BLET's argument that the Norris-LaGuardia Act does not require a showing of irreparable harm is contrary to the plain language of the statute, and mischaracterizes the case law cited in BLET's brief.

### A.    BLET Mischaracterizes The Record In This Case.

BLET completely mischaracterizes the evidence presented at the truncated preliminary injunction hearing held on June 10, 2021.  Contrary to BLET's mischaracterizations, the evidence presented at the preliminary injunction hearing conclusively established that the contractual grievance process, which culminates in binding arbitration pursuant to Section 3 of the RLA, remains available to the

3

six charged employees, and could result in them being exonerated and compensated for any time lost at multiple steps in that process. This evidence precluded any finding that BLET would suffer irreparable injury if the investigations of the six charged employees were allowed to proceed, and, in any event, any purported "finding" by the district court to the contrary would be clearly erroneous.

BLET argues that Union Pacific "effectively fired" the six employees by issuing them Notices of Investigation and holding them out of service pending investigation. (BLET Br. at 1-2). BLET then (though inconsistently) argues that Union Pacific's actions resulted in the "indefinite suspension" of the local leadership of BLET Division 192 in El Paso. (BLET Br. at 6). Both of these characterizations are entirely wrong.

BLET's Brief studiously avoids any mention whatsoever of the System Discipline Rule that BLET negotiated with Union Pacific to govern the disciplinary process for BLET-represented employees. BLET's witnesses admitted that the issuance of what BLET dismissively characterizes as a "so-called Notice of Investigation" (BLET Br. at 6) is actually the contractually required first step in the collectively bargained discipline process. (ROA.556; Union Pacific Ex. 1). This is an important procedural protection negotiated by BLET on behalf of its members who are subject to possible disciplinary action. The System Discipline

4

Rule specifically contemplates that an employee may be held out of service pending investigation. Section 2 of the System Discipline Rule provides:

> Locomotive Engineers will not be disciplined without first being given a fair and impartial investigation except as provided below. ***They may, however, be held out of service pending investigation***, but it is not intended that an engineer be held out of service for minor offenses.

(Union Pacific Ex. 1 at 1) (emphasis added).

Moreover, BLET's witnesses admitted at the June 10, 2021 hearing that the System Discipline Rule provides multiple levels of review *culminating in binding arbitration*, and that an employee could be exonerated and receive full back pay at any step in that process. (ROA.558-559, 576). Thus, contrary to BLET's misleading characterization of the discipline process, none of the employees at issue was "effectively fired." All that happened was Union Pacific commenced the collectively bargained process for potentially taking disciplinary action.

BLET's claim that the six employees were "indefinitely suspended" by Union Pacific is equally disingenuous. Contrary to BLET's argument, the investigations for these individuals were originally scheduled for May 20, 2021, and then postponed to June 2 and 3, 2021. (ROA.232). The investigations were then postponed again ***at the request of BLET***, and rescheduled for July 7, 2021. (ROA.232-233, 236-241). Thus, there was no "indefinite suspension," and the lengthy delay in holding the investigations was largely a result ***of the Union's***

5

*request*.  And, of course, those investigations were never held as scheduled because the district court enjoined Union Pacific from proceeding with them.

BLET also repeatedly claims that Union Pacific's Notices of Investigation sought to investigate a fight that occurred "*at a Division 192 Union meeting*, off Carrier property and while all those suspended were off duty."  (BLET Br. at 6) (emphasis in original).  BLET's claim that Union Pacific was attempting to investigate what happened ***at*** a Division 192 meeting is simply false, as demonstrated by uncontroverted record evidence.  Both BLET's witnesses and David Cisneros testified that the fight that led to the issuance of the Notices of Investigation took place in a parking lot outside a restaurant where a local union meeting was scheduled to (and later did) take place.  (ROA.542-543, 569-570, 601).

BLET attempts to make much of the fact that the fight occurred off Union Pacific property and while the employees involved were off duty.  But Union Pacific presented unrebutted testimony from its Director of Labor Relations, Beth Wilderman, that Union Pacific has a long history of taking disciplinary action against employees for off duty misconduct when there is a nexus between the off duty conduct and the company's interests in the workplace.  (ROA.618-619).  That unrebutted testimony was supported by arbitration decisions – involving both Union Pacific and other railroad carriers – recognizing that an employer may

6

properly discipline an employee for off-duty, off-premises misconduct that has a nexus to the employer's legitimate business interests, including threats against a co-worker. (ROA.619-620; Union Pacific Exs. 8-18). There is a well-developed body of arbitration case law that defines circumstances under which an employer may discipline employees for off-duty misconduct, and the district court should have allowed the arbitration process to address that issue here. *See*, F. Elkouri & E. Elkouri, *How Arbitration Works*, Ch. 15 § 15.3A.I (BNA 8th Ed. 2019) ("Management may discipline employees for off-duty conduct if there is a 'nexus' between the conduct and the employer's legitimate business interests") (quoting Gershenfeld, Discipline and Discharge, The Common Law of the Workplace: The Views of Arbitrators 180 (St. Antoine, ed., BNA Books 2d ed. 2005)).

BLET also relies on the fact that Mr. Cisneros was not issued a Notice of Investigation and taken out of service, while five of the six employees who received Notices of Investigation and were taken out of service were officers of BLET Division 192. But, as Ms. Wilderman testified, the System Discipline Rule contains a 10-day time limit for issuing Notices of Investigation. During that time period Union Pacific received serious allegations of harassment and retaliation from Mr. Cisneros (in retaliation for his acceptance of workplace assignments), and taking him out of service in response to those allegations would have "a

chilling effect on employees coming forward to report allegations of harassment or retaliation like he did." (ROA.623).

While BLET emphasizes that the district court questioned Mr. Cisneros' credibility at the conclusion of the preliminary injunction hearing (BLET Br. at 8), Union Pacific initiated the contractual investigation process based on the information it had at hand during the time period allowed by the parties' agreement.  It makes no difference that the district court, with 20/20 hindsight, later questioned Mr. Cisneros' credibility after an evidentiary hearing.  Under the collectively bargained disciplinary process set forth in the System Discipline Rule, whether Mr. Cisneros' allegations of harassment and retaliation ultimately could be substantiated or found to be credible is a matter to be determined following the investigation process.  A Union Pacific hearing officer, rather than a federal district court, is charged with the responsibility to determine whether discipline should be assessed.  But, of course, that investigation has not happened because of the district court's injunction.

BLET also argues that Union Pacific "*did not investigate anything with the Union leaders. That is, it did not ask any questions or obtain statements from any Union leaders.*" (BLET Br. at 9)(emphasis in original).  Again, this argument simply ignores the fact that the System Discipline Rule establishes a mandatory process for investigating alleged misconduct by BLET-represented engineers,

8

including Union officers.  During such an investigation, an engineer is entitled to union representation and has an opportunity to cross-examine witnesses who testify.  (ROA.557; Union Pacific Ex. 1 at p.2).  BLET's suggestion that Union Pacific could conduct an *ex parte* interview with an employee accused of misconduct outside of the collectively-bargained process is wrong and thoroughly disingenuous.  If Union Pacific had conducted *ex parte* interviews of accused employees outside of the collectively-bargained investigation process, BLET could have complained that Union Pacific was circumventing the contractual discipline process.  But, Union Pacific fully complied with the System Discipline Rule by giving the accused employees notice of the charges against them and affording them the opportunity to respond to those charges with union representation, which would include the opportunity to cross-examine the railroad's witnesses and present their own side of the story.  (ROA.557).  BLET's claim that Union Pacific acted improperly by complying with the contractual discipline procedure is simply outrageous.

Finally, BLET's assertion that Union Pacific "effectively shut down the local division representation in El Paso, Texas" (BLET Br. at 6) is contrary to the uncontested evidence presented at the hearing.  Ms. Wilderman testified *without rebuttal* that there is nothing in the parties' collective bargaining agreements that prevents a BLET officer from continuing to function as a union representative

while suspended for disciplinary reasons. (ROA.622). BLET's witness, Kevin Seale, whose role as a BLET local trustee involves filing time claims on behalf of other employees, admitted that he did not need to have access to Union Pacific property to fulfill that role. (ROA.566, 574). David Butler, BLET Division 192 Local President, testified that his role as a union representative was limited to representing employees in disciplinary proceedings and filing time claims, but also admitted that he had not even requested permission to represent any employees in any disciplinary proceedings since he had been suspended pending investigation. (ROA.554-555). Mr. Butler also admitted that local officers like himself do not engage in collective bargaining or file appeals in disciplinary cases. (ROA.554, 558-559).

Simply put, to the extent that the district court's rubber-stamping of BLET's proffered injunction order can be characterized as making any "findings of fact," the district court's conclusion that BLET "will suffer substantial immediate, irreparable loss and damage to its and its members' rights to collectively bargain through the labor organization of their choice" as guaranteed by the RLA was clearly erroneous. (*See* ROA.348). The evidence presented at the hearing clearly established that the five local union officers who were issued Notices of Investigation and held out of service pending investigation remained able to perform the limited functions they perform as local union officers. Moreover, the

10

evidence also established that each of the charged individuals would have been able to avail themselves of the collectively bargained investigation and appeal processes set forth in the parties' System Discipline Rule, which provides multiple opportunities for them to be exonerated and compensated for any time lost. BLET's contrary argument, taken to its logical conclusion, would effectively mean that Union Pacific could never discipline a group of employees for off-duty misconduct, so long as the employees held local union positions.

## B. BLET Has Not Made The Requisite Showing of Irreparable Injury To The Designated Bargaining Representative To Avoid Arbitration of A Claim Under Section 2 Third And Fourth Of The RLA.

BLET's brief acknowledges that the Supreme Court has specifically held that Sections 2 Third and Fourth of the RLA are "directed primarily at control over the initial step in collective bargaining – the determination of the employees' representatives." (BLET Br. at 18, *quoting TWA, Inc. v. Independent Fed. of Flight Attendants*, 489 U.S. 426, 441 (1989)("*TWA*")). Indeed, BLET recognizes that "Sections 2, Third and Fourth of the RLA prohibit carriers from taking actions designed to interfere with employees' rights **to organize and bargain collectively**." (BLET Br. at 18)(emphasis added). Nonetheless, while acknowledging that the Supreme Court emphasized in *TWA* that the prohibition against carrier interference with the right of employees to organize embodied in Sections 2 Third and Fourth applied "primarily" in the pre-certification context, BLET argues that "'primarily'

11

means primarily; not never" and that the courts have recognized that an action in the post-certification context is viable when a carrier takes actions that are "inherently destructive" of a union or engages in an attempt to "destroy the union." (BLET Br. at 22-23, *quoting TWA*, 489 U.S. at 442 and *National R.R. Pass. Corp. v. International Ass'n of Mach. & Aerospace Workers*, 915 F.2d 43, 51, (1st Cir. 1990)("*Amtrak v. IAM*").

BLET's recitation of the "inherently destructive" language from the Supreme Court's *TWA* decision and the First Circuit's decision in *Amtrak v. IAM* conveniently omits any discussion of how this Court has applied those concepts. Under this Court's precedents, evidence of anti-union animus is a ***necessary*** precondition for asserting jurisdiction under Sections 2 Third and Fourth, but such evidence is not ***sufficient*** to support the exercise of jurisdiction without a further showing that the challenged actions would result in "irreparable injury of such magnitude" that any subsequent decision reached in the grievance and arbitration process mandated under Section 3 of the RLA would be so meaningless as to effectively deprive the arbitration process of jurisdiction. *APFA v. American*, 894 F.2d at 211. To rule otherwise would effectively open the federal courts to statutory RLA claims any time a party could make a facially plausible claim that a carrier's decision on any matter – discipline, promotions, allocation of resources – was motivated by anti-union animus. Such a result would eviscerate the Supreme

Court's admonition that claims under Sections 2 Third and Fourth of the RLA are reserved for disputes that affect employees' choice of their bargaining agent, which cannot be remedied through the administrative processes created by Congress.

In *APFA v. American*, this Court explained that injunctive relief under Sections 2 Third and Fourth is only available when the carrier's actions "would result in irreparable injury of a magnitude that would render a decision in favor of the unions virtually meaningless, and consequently also deprive the grievance mechanism of jurisdiction." *APFA v. American,* 843 F.2d at 211 (*quoting International Ass'n of Mach. and Aerospace Workers, Airline Dist. 146 v. Frontier Airlines, Inc.*, 664 F.2d 538, 542 (5th Cir. 1981) ("*IAM v. Frontier*")).  As this Court further emphasized in *APFA v. American*, "these exceptions to the limits on federal judicial power arise ***only*** when the administrative mechanism that Congress confected breaks down.  If the administrative process is available, minor disputes ***must*** be routed through it." *APFA v. American*, 843 F.2d at 211 (emphasis added).

In this case, BLET has not made (and cannot make) the requisite showing that the Union would suffer such an irreparable injury from allowing the investigations of the charged employees to proceed that any remedy available through the grievance and arbitration process would be so meaningless as to "deprive the grievance mechanism of jurisdiction" as required under *APFA v. American*.  BLET's witnesses acknowledged that the collectively bargained

13

discipline process under the System Discipline Rule, culminating in binding arbitration before the NRAB remains available to them, and that at any point during that process, they could be exonerated and made whole for any lost compensation. (ROA.556-559). Thus, under this Court's standard articulated in *APFA v. American*, this case involves a minor dispute that must be resolved through the mandatory arbitration procedures set forth in Section 3 of the RLA.

BLET's Brief utterly fails to address this Court's holdings in *APFA v. American* and *IAM v. Frontier*, and instead relies entirely on this Court's 1963 decision in *Brotherhood of Ry. Trainmen v. Central of Georgia Ry.*, 305 F. 2d 605 (5th Cir. 1962) ("*Central of Georgia*"). In that case, this Court reversed a district court decision granting the railroad's motion to dismiss a complaint brought by a union and a union General Chairman alleging that disciplinary charges against the General Chairman for engaging in alleged "gross disloyalty" to the railroad by soliciting other employees to file personal injury lawsuits against the railroad violated the parties' agreement and were brought for purposes of discrediting the union and interfering with employees designation of the union as their representative. *Central of Georgia*, 305 F.2d at 606-607.

*Central of Georgia* is plainly distinguishable, as many subsequent courts have observed when presented with similar fact patterns. In reversing the district court's decision, this Court emphasized that it was ruling "only on bare bones

pleadings," and accepted the factual allegations pled in the complaint as established. *Id*. at 608-609. BLET does not acknowledge the important distinction between the Court's reliance on unrebutted factual allegations in "bare bones pleadings" at issue in *Central of Georgia*, and the evidentiary record developed at the preliminary injunction hearing in this case.

More importantly, BLET glosses over the subsequent case law that has called into question the continued vitality of the holding in *Central of Georgia*. In particular, BLET fails to address the fact that the author of the *Central of Georgia* decision, Judge John R. Brown, subsequently acknowledged in the First Circuit's decision in *IAM v. Amtrak* (which he authored sitting by designation), that in light of the Supreme Court's subsequent decision in *TWA*, the *Central of Georgia* decision failed to give "sufficient deference to the importance of preserving the exclusive jurisdiction of the Adjustment Boards in post-certification 'minor disputes' under the RLA." *IAM v. Amtrak*, 915 F.2d at 53, n.15.

BLET's argument also ignores the Supreme Court's subsequent ruling that "bare bones pleadings" are insufficient to withstand a motion to dismiss unless the plaintiff can meet the more rigorous pleading standards established in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Central of Georgia* was decided shortly after *Conley v. Gibson*, 355 U.S. 41 (1957), and applied a far more lenient pleading standard. Under current law,

15

however, BLET is required to plead a plausible basis for concluding that the facts of this case justify the standard for post-certification federal court jurisdiction under Sections 2 Third and Fourth.  Thus, as a matter of both civil procedure under Rule 8 and substantive law under the RLA, *Central of Georgia* cannot be considered good law.[2]

BLET argues that this Court's citation to *Central of Georgia* in a footnote in *Brotherhood of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co.*, <u>894 F.2d 1463, 1468</u>, n. 10 (5th Cir. 1990) ("*BRC v. ATSF*") means that *Central of Georgia* remains good law, and supports the district court's issuance of an injunction in this case.  It does not.  The footnote citation to *Central of Georgia* in *BRC v. ATSF* was purely for purposes of stating a general proposition that "actions taken for the purpose of weakening or destroying a union" may constitute the sort of

---

[2] BLET seeks to avoid the analysis of *Central of Georgia* by declaring it "binding" on this Court.  However, BLET is mistaken.  Where intervening Supreme Court decisions undercut a prior decision of a Fifth Circuit panel, the Court is required to follow the Supreme Court's subsequent decision.  *See Gahagan v. U.S. Citizenship & Immigration Servs.*, <u>911 F.3d 298, 304</u> (5th Cir. 2018) (holding that after the U.S. Supreme Court decision in *Kay v. Ehrler*, Fifth Circuit case law no longer represented binding precedent on the eligibility of *pro se* attorneys to recover fee awards under FOIA); *see United States v. Rodriguez*, <u>602 F.3d 346</u> (5th Cir. 2010) (declining to follow Fifth Circuit precedent where later Supreme Court case contained contrary reasoning); *see also Dean v. City of Shreveport*, <u>438 F.3d 448, 460</u> n.8 (5th Cir. 2006) ("[B]y elevating the standard of review to strict scrutiny, [U.S. Supreme Court], effectively overruled our holding in *City of Alexandria*.").  At minimum, *TWA*, *Iqbal* and *Twombley* require a reevaluation of *Central of Georgia*.

LEGAL\54166048\2

"exceptional circumstance" that would justify a federal court asserting jurisdiction over what would otherwise be a minor dispute.

The actual holding of *BRC v. ATSF* supports Union Pacific's position in this case. There, the union challenged as unlawful the railroad's offer of a "buyout" program to incentivize employees to retire and waive their rights under the applicable collective bargaining agreement in exchange for a lump sum payment. According to the union, the railroad engaged in unlawful direct dealing with employees in violation of the RLA by offering them buyouts. *BRC v. ATSF*, 894 F.2d at 1464. Despite the union's characterization of the parties' dispute as involving a statutory violation, this Court affirmed the district court's decision dismissing the complaint for lack of jurisdiction because it involved a minor dispute over whether the parties' agreement permitted the railroad to offer the buyouts directly to the employees. *Id.* at 1467-1468. Thus, far from supporting BLET's argument that this Court's decision in *BRC v. ATSF* reaffirmed the holding of *Central of Georgia*, the actual decision in that case strongly supports Union Pacific's position that alleged statutory violations remain minor disputes subject to the exclusive jurisdiction of the NRAB or an arbitration panel established by the parties where, as here, the dispute is governed by the parties' collective bargaining agreement.

17

**C. Union Pacific's Argument That Sections 2 Third And Fourth Prohibit Interference With The Union As Opposed To Individual Union Officers Is Supported By The Statutory Text And Recent Precedent Under The RLA.**

According to BLET, Union Pacific's argument that Sections 2 Third and Fourth require a showing that Union Pacific's actions undermined BLET's status as representative, as opposed to individual local officers, is "made of whole cloth." (BLET Br. at 25-26). Quite the contrary. Union Pacific's position is firmly supported by the plain language of the statute. Section 2 Third provides, "Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other." 45 U.S.C. § 152 Third. Similarly, Section 2 Fourth protects the right of employees "to organize and bargain collectively through representatives of their own choosing," and prohibits a railroad carrier from in any way interfering with "the right of its employees to join, organize, or assist in organizing *the labor organization of their choice*." 45 U.S.C. § 152 Fourth (emphasis added).

Similarly, Section 2 Ninth of the RLA assigns the National Mediation Board ("NMB") with responsibility for deciding representation disputes under the Act, and provides that once the NMB certifies a union as the representative for a particular craft or class of employees, "the carrier shall treat with *the representative* so certified as the representative of the craft or class for the

18

purposes of this chapter." 45 U.S.C. § 152 Ninth (emphasis added).  The NMB has long interpreted this statutory language to mandate the certification of a single representative for a particular craft or class on a system-wide basis. *See Wisconsin Central Transp. Corp.*, 29 NMB 282, 292-293 (Apr. 26, 2002) (dismissing petition seeking to represent employees at ore dock because petitioned-for employees were part of system-wide maintenance of way craft or class); *National R.R. Pass. Corp.*, 31 NMB 178, 189 (Jan. 29, 2004) (dismissing petition to represent Amtrak "Train Directors" who were part of larger craft or class and explaining that the NMB's "longstanding policy that system-wide representation is only possible when the craft or class includes all employees who are eligible to belong to that craft or class"); *Grand Trunk Western R.R. Co.*, 12 NMB 228, 234 (June 27, 1985) (defining system-wide craft or class and explaining "Section 2, Ninth of the Railway Labor Act provides for representation of employees … on a system-wide basis").  Thus, Sections 2 Third, Fourth and Ninth of the RLA require designation of a single representative for a system-wide craft or class of employees.

This statutory focus on protecting employee rights to representation by a labor organization of their own choosing on a system-wide basis provided the foundation for the Second Circuit's decision in *UTU v. Amtrak*, in which the court explained that "the term 'representative' refers to the *union* or other *organization* designated to represent an employee, not merely to an individual official within

that organization." *UTU v. Amtrak*, <u>588 F.3d at 812</u> (emphasis in original).  BLET

failed to even mention the Second Circuit's *UTU v. Amtrak* decision in its brief,

much less attempt to distinguish the court's persuasive reading of the statutory text.

Here, there was no evidence that Union Pacific interfered in the slightest

with BLET's status as the designated system-wide representative of the craft or

class of locomotive engineers on Union Pacific.  As described at length in Union

Pacific's opening brief, BLET is an entrenched labor organization representing

over 5,000 Union Pacific engineers through multiple General Committees and

local Divisions staffed by over 600 local union officers.  Bringing disciplinary

charges against a handful of local officers on a single local Division who do not

even engage in collective bargaining has no effect whatsoever on BLET's status as

the designated bargaining representative of Union Pacific's engineers, or on

BLET's ability to represent its members.

**D.     BLET's Argument That Union Pacific Waived Any Defense To The Union's Surveillance Claim Misrepresents The Factual Record And Has Nothing To Do With The District Court's Jurisdiction To Issue An Injunction In This Case.**

BLET argues that Union Pacific has "not set forth any argument that its

surveillance of the Union's affairs by virtue of collecting information about the

internal Union communications and the Union meeting on March 9, 2021, is

insufficient to state a claim under RLA Sections 2, Third and 2, Fourth. It has thus

waived any such challenge." (BLET Br. at 26).  In addition to being

20

grammatically incomprehensible, BLET's argument is utterly without support in the record, and is completely irrelevant to this Court's review of the district court's injunction order in this case.

BLET's argument depends on its mischaracterization of the record regarding the issuance of the Notices of Investigation at issue in this case. As explained above, the Notices of Investigation arose out of a complaint from Mr. Cisneros that he had been threatened by local union leaders for accepting calls for voluntary work assignments, which culminated in a fight that took place in a parking lot *outside* a restaurant where a union meeting was scheduled to take place *before* the meeting occurred. It is not surveillance of union activities to investigate a physical altercation that resulted from what one employee characterized as a campaign of harassment and retaliation by other employees who happen to be union officers.

More importantly (and putting aside the factual weakness of BLET's "surveillance" argument), BLET does not cite a single case to support its claim that alleged "surveillance" of union activities is sufficient to state a claim under Sections 2 Third and Fourth of the RLA in the post-certification context. The sole RLA case BLET cites– *Konop v. Hawaiian Airlines, Inc.* 302 F.3d 868, 881-882 (9th Cir. 2002) – involved a claim by an employee attempting to organize a dissident union that the airline improperly accessed and disclosed information from a private website he maintained. Thus, *Konop* involved allegations of interference

analogous to the pre-certification context that the Supreme Court emphasized was the primary focus of Sections 2 Third and Fourth in *TWA*. Under the well-established case law discussed above and in Union Pacific's principal brief, in the post-certification context this Court's precedents require a showing that Union Pacific's actions would cause irreparable injury to the Union, as the system-wide bargaining representative, that cannot be remedied through the mandatory arbitration procedures under Section 3 of the RLA. *APFA v. American*, 843 F.2d at 211. BLET offers no explanation for how any alleged "surveillance" of local union officers' threats against a co-worker could possibly meet this exacting standard.

### E. The Norris-LaGuardia Act Also Requires A Showing Of Irreparable Harm To Justify Issuance Of An Injunction.

BLET's final argument is that the requirement of irreparable harm for issuance of an injunction under the Norris-LaGuardia Act, 29 U.S.C. § 107 does not apply in RLA cases. BLET is simply wrong. The Norris-LaGuardia Act expressly requires that before a federal court can issue an injunction in a case arising out of a labor dispute, the plaintiff must prove, *inter alia*, that "substantial and irreparable injury to complainant's property will follow" without the injunction. 29 U.S.C. § 107(b).

BLET argues that in accommodating the Norris-LaGuardia Act to the RLA, "this Court has expressly held that in RLA Sections 2, Third and 2, Fourth claims,

22

no showing of irreparable injury is necessary." (BLET Br. at 28, citing *Wright v. Union Pacific R.R. Co.*, 990 F.3d 428, 435 (5th Cir. 2021)). This Court's decision in *Wright* says nothing of the sort. In *Wright*, the plaintiff-employee brought a claim alleging that Union Pacific violated the RLA by terminating her employment in retaliation for requests for union representation during "coaching" sessions. The district court dismissed that claim, and this Court affirmed. In discussing Wright's RLA claim, this Court began by distinguishing between major and minor disputes, and explained, "In major disputes, 'district courts have subject matter jurisdiction to enjoin a violation of the status quo without the showing of irreparable injury.'" *Wright*, 990 F.3d at 435 (*quoting Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*, 491 U.S. 299, 303 (1989)). The Court then went on to affirm the dismissal of Wright's RLA claim because it was based on implied terms in the applicable collective bargaining agreement, and therefore, was a minor dispute under the RLA. *Wright*, 990 F.3d at 436.

Thus, *Wright* does not stand for the proposition urged by BLET that there is no requirement for a showing of irreparable harm in cases under Sections 2 Third and Fourth of the RLA. This case does not involve a major dispute, which is the type of case the *Wright* Court explained did not require a showing of irreparable harm. On the contrary, like *Wright*, this case involves a minor dispute involving disciplinary action subject to the exclusive jurisdiction of the NRAB.

23

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Union Pacific's opening brief, Appellant Union Pacific Railroad Company requests that the Court vacate the district court's order granting injunctive relief and remand the case to the district court with instructions to dismiss the case for lack of subject matter jurisdiction.

Union Pacific further renews its request that the Court stay the injunction pending final disposition of this appeal. In the absence of a stay, Union Pacific remains unable to follow the contractually established discipline procedure, as well as the Railway Labor Act's mandatory processes for resolving any dispute – if discipline is ever assessed. In support of that request, Union Pacific incorporates by reference its prior motion to stay the injunction pending appeal and the merits arguments set forth in Union Pacific's opening and reply briefs.

Respectfully submitted,

*/s/ Robert S. Hawkins*
COZEN O'CONNOR
Robert S. Hawkins (*counsel of record*)
Andrew J. Rolfes
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: (215) 665-2015
E-mail: rhawkins@cozen.com
E-mail: arolfes@cozen.com

*Attorneys for Appellant*
*Union Pacific Railroad Company*

24

## CERTIFICATE OF SERVICE

On September 10, 2021, this Response was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies: (1) any required privacy redactions comply with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with Crowd Strike Falcon version 6.23 and is free of viruses.

*/s/ Robert S. Hawkins*
Robert S. Hawkins

## CERTIFICATE OF COMPLIANCE

This Response complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,569 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

*/s/ Robert S. Hawkins*
Robert S. Hawkins